1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 20, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARTINA R. M.,

    Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

No.  1:19-CV-03136-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 10, 11. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-8, 15-42. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed her application for disability insurance benefits on October 6, 2015, alleging disability beginning on December 18, 2013. *See* AR 21, 191. Her application was initially denied on January 22, 2016, *see* AR 110-16, and on reconsideration on June 1, 2016. *See* AR 118-123. On June 8, 2016, Plaintiff filed a request for a hearing. AR 124-25.

A hearing with an Administrative Law Judge ("ALJ") occurred on October 12, 2017. AR 43-82. On April 30, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 15-42. On April 25, 2019, the Appeals Council denied Plaintiff's request for review, AR 1-8, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On June 13, 2019, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, her claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only

if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is, he or she is not entitled to disability benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not, the claim is denied and no further steps are required. Otherwise, the evaluation proceeds to step three.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments,

1  the claimant is *per se* disabled and qualifies for benefits. *Id.* If not, the evaluation

2  proceeds to the fourth step.

3      Step four examines whether the claimant's residual functional capacity

4  enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If

5  the claimant can perform past relevant work, he or she is not entitled to benefits

6  and the inquiry ends. *Id.*

7      Step five shifts the burden to the Commissioner to prove that the claimant is

8  able to perform other work in the national economy, taking into account the

9  claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

10  404.1520(g), 404.1560(c).

### III.    Standard of Review

12      A district court's review of a final decision of the Commissioner is governed

13  by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the

14  Commissioner's decision will be disturbed "only if it is not supported by

15  substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144,

16  1158-59 (9th Cir. 2012) (citing § 405(g)). It is the ALJ's responsibility to "resolve

17  conflicts in the evidence, and if the evidence can support either outcome, the court

18  may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d

19  1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that

20  is supported by the evidence, it is not the court's role to second-guess it. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 43 years old on the alleged date of onset, which the regulations define as a younger person. AR 84; *see* 20 C.F.R. § 404.1563(c). She attended school through the sixth grade in Mexico. AR 66, 228. Her preferred language is Spanish and her ability to speak, read, write, or understand English is limited. AR 49-50, 226. She has past work as a cashier, cook helper, agricultural produce sorter, and weeder-thinner. AR 69, 210, 228.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from December 18, 2013 (the alleged onset date) through April 30, 2018 (the date of the ALJ's decision). AR 21, 35-36.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date of the ALJ's decision. AR 23.

**At step two**, the ALJ found Plaintiff had the following severe impairments: (1) bilateral shoulder degenerative joint disease, and (2) adjustment disorder with depression and anxiety. AR 24.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 25.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), albeit with some additional limitations. AR 26-27. With respect to her physical abilities, Plaintiff could lift and carry up to 10 pounds frequently. AR 26. She could occasionally reach at or below her shoulders but could never reach above them. AR 27. She could frequently handle and finger. AR 27. She could occasionally stoop and crouch but could never squat, crawl, or kneel. AR 27. She could not climb ramps, stairs, ropes, ladders, or scaffolds. AR 27.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could engage in unskilled, repetitive, routine tasks in two-hour increments. AR 27. She would be off task eight percent of the time and miss work 10 days per year. AR 27. She could speak English at a first-grade level. AR 27. Given these physical and mental limitations, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 34.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. AR 34-35. These included the jobs of conveyer line bakery worker and fish scaling machine operator. AR 35.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) improperly discredited her subjective pain complaint testimony; (2) improperly evaluated and weighed the medical opinion evidence; (3) improperly found that her lumbar impairments were not severe, (4) erred in finding that she had English language capabilities at a first-grade level; and (5) posed an incomplete hypothetical to the vocational expert, which did not account for all of her limitations. ECF No. 10 at 3, 6-20.

## VII.   Discussion

**A.    The ALJ did not Improperly Discount Plaintiff's Subjective Complaints**

Plaintiff first argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 10 at 6-9.

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the symptoms alleged—as is the case here—and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the

severity of his or her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In this case, the ALJ discounted Plaintiff's symptom complaints because: (1) they were inconsistent with the medical evidence, (2) Plaintiff did not follow recommended treatment for her shoulders or mental condition, and (3) Plaintiff's lack of ongoing employment was due to factors unrelated to her allegedly disabling impairments.[1] *See* AR 27-30. These are generally appropriate bases for discounting a claimant's pain testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

## 1.    Inconsistent with the medical evidence

The ALJ first discounted Plaintiff's testimony on the basis that it was inconsistent with the medical record. *See* AR 28-30. The ALJ described how Plaintiff injured her right shoulder at work in October 2009 and underwent arthroscopic surgery in December 2010. AR 28. Her progress in physical therapy

---

[1] Plaintiff tersely argues that "the ALJ failed to make specific findings" as to the reasons why he discounted her credibility. ECF No. 10 at 7. The record demonstrates otherwise. Over four single-spaced pages, the ALJ outlined the applicable law, Plaintiff's hearing testimony, and the relevant medical evidence. *See* AR 27-30. The ALJ then discounted her testimony based on the three rationales outlined above and supported those rationales with numerous specific examples accompanied by citations to the record. *See* AR 27-30. While Plaintiff may disagree with the ALJ's *characterization* of the record, her bald assertion that "the ALJ failed to make specific findings" plainly lacks merit. ECF No. 10 at 7.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

was slow but her orthopedist noted "gradual, steady improvement." AR 28. In mid-2012, her orthopedist "noted that she had full painless motion of the shoulder" and released her to full employment without restriction. AR 28. Plaintiff subsequently complained of left shoulder pain due to overuse from accommodating her right arm. AR 28. She was eventually diagnosed with left shoulder sprain, left tennis elbow, and a partial left rotator cuff tear. AR 29, 362.

The ALJ acknowledged that Plaintiff's shoulder conditions resulted in some residual restrictions but found that these were relatively mild. AR 28. In April 2014 (a few months after the alleged onset date), Plaintiff's nurse practitioner noted that Plaintiff's left shoulder was pain-free and had "full active range of motion." AR 29, 633. The nurse practitioner believed that Plaintiff could work, provided that she did not have to lift above her shoulders. AR 633. A few months later, however, the nurse practitioner noted decreased range of motion and shoulder joint tenderness. AR 29, 473.

In March 2015, an examining orthopedic surgeon tested Plaintiff's shoulder range of motion and noted only mild restrictions. AR 29; *see* AR 359. He also found strength "in all muscle groups of the left and right shoulders." AR 358. He did not believe any further treatment was warranted and rated her right shoulder at 10 percent permanent impairment and her left shoulder at 7 percent impairment.

1  AR 362-63. He noted "mild self-limiting" and "mild pain behavior" during his

2  examination. AR 357.

3      The ALJ continued outlining the longitudinal medical record. AR 29. In

4  February 2016, Plaintiff's physician's assistant noted that Plaintiff's movements

5  were pain free and she had no joint inflammation or swelling. AR 29, 616. In

6  October 2016, a new orthopedic surgeon noted "active pain free range of motion"

7  in both shoulders. AR 1364. In March 2017, Plaintiff again complained of bilateral

8  shoulder pain, so her surgeon ordered updated x-rays. AR 1370-71. The x-rays

9  "did not reveal significant worsening or disabling type abnormalities." AR 29.

10  Rather, they "showed that her left shoulder was normal" and that her "right

11  shoulder was arthritic, but with sufficient joint space." AR 29.

12      In April 2017, Plaintiff went back to physical therapy for her shoulder. AR

13  29, 1225. She was discharged three months later with having either "achieved her

14  goals or made good or excellent progress" on each goal. AR 29; *see* AR 1278. In

15  light of this medical evidence, the ALJ concluded that Plaintiff could only reach at

16  or below shoulder level occasionally and could not reach overhead at all. AR 29.

17  The ALJ found, however, that the record did not support Plaintiff's claim that her

18  shoulder impairment was completely disabling. AR 29.

19      In addition to outlining the medical evidence regarding Plaintiff's shoulder

20  conditions, the ALJ also summarized the longitudinal record regarding her mental

impairment. AR 30. In January 2016, psychiatrist Dr. Amy Dowell evaluated

Plaintiff and performed a mental status examination, which was normal. AR 30,

611-13. Dr. Dowell diagnosed Plaintiff with adjustment disorder with mixed

anxiety and depressed mood, "caused by her shoulder injury and then being laid-

off from work." AR 30, 613. She did not believe that this condition would hinder

Plaintiff's ability to work. AR 613.

At a psychiatric evaluation with Dr. Ronald Early in May 2016, Plaintiff did

not demonstrate acute anxiety. AR 30, 1183. She answered all questions without

hesitation and there was no indication of a thought disorder, disorientation,

confusion, or psychosis. AR 30, 1183.

At another psychiatric evaluation in July 2016, psychiatrist Dr. Russell

Vandenbelt diagnosed Plaintiff with unspecified depressive disorder which he

attributed to her situational unemployment and "the lack of the structure, schedule,

social contact, and sense of purpose that employment provides." AR 30, 1222-23.

Dr. Vandenbelt stated, "There is no mental health reason why [Plaintiff] cannot

return to full-time continuous gainful employment. In fact, a return to work would

be helpful." AR 1224. Dr. Vandenbelt believed it was important to get Plaintiff

"back to work as soon as possible, as she more probably than not has a growing

disability conviction that exists in a vicious cycle with her depression." AR 1224.

In light of these evaluations, the ALJ concluded that "[t]hese stable findings and

1   situational symptoms" supported the determination "that the claimant's mental

2   health symptoms [were] not disabling." AR 30.

3          Ignoring nearly all of the ALJ's lengthy discussion of the medical record,

4   Plaintiff argues that the ALJ selectively quoted from the chart note dated February

5   4, 2016. ECF No. 10 at 7-8. The ALJ cited this chart note because the physician's

6   assistant had noted that Plaintiff's movements were pain free and that she had no

7   joint inflammation or swelling. AR 29. Plaintiff argues that this chart note also

8   indicated that she complained about worsening shoulder pain that prevented her

9   from working or sleeping, which the ALJ failed to mention. ECF No. 10 at 7-8; *see*

10  AR 615-17. While this is true, Plaintiff's narrow focus on a single chart note—

11  which consists of one sentence in the ALJ's four-page discussion—is insufficient

12  to undermine the ALJ's analysis. *See Hall v. Astrue*, 2010 WL 2901782, at *2

13  (W.D. Wash. 2010) ("Hall's argument focuses too narrowly on a few facts that

14  may weigh in her favor and loses sight of the many facts that support the ruling

15  against her.").

16         **2.    Failure to seek treatment**

17         The ALJ also discounted Plaintiff's subjective complaints on the basis that

18  she "did not exhaust all available [treatment] options." AR 29. The ALJ first noted

19  that in April 2014, a nurse practitioner advised Plaintiff that surgical repair might

20  be "the only option to improve her left shoulder pain." AR 29; *see* AR 633.

However, Plaintiff indicated that she would refuse surgery. AR 29, 633. Plaintiff then asked the nurse practitioner how she could "just get disability." AR 633. The nurse practitioner noted that if Plaintiff continued to decline surgery, there was no treatment that could permanently improve her left shoulder symptoms. AR 633.

Second, the ALJ observed that Plaintiff had never gone to the emergency room for uncontrolled shoulder pain, but had gone "for unrelated concerns." AR 29. This suggested to the ALJ "that the pain from her shoulders was not disabling." AR 29.

Finally, the ALJ reasoned that Plaintiff essentially never sought mental health treatment for her psychological condition. AR 30. Plaintiff saw a psychologist once, in February 2016. *See* AR 614. The psychologist believed Plaintiff had "depression and chronic pain that [were] exacerbated by personal beliefs about her limitations." AR 614. The psychologist advised Plaintiff to follow up with the behavioral health clinic. AR 615. Plaintiff consented to these services. AR 615. However, Plaintiff did not follow this recommendation, did not engage with counseling, and never sought any other mental health treatment. AR 1220. At the hearing, the ALJ asked Plaintiff why she did not follow up with the psychologist's recommendations and she responded, "I don't know." AR 57. The ALJ concluded that Plaintiff's failure to seek treatment belied her allegations about the severity of her symptoms. AR 29-30.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 13**

1    Plaintiff argues that the reason why she refused left shoulder surgery was

2    because her previous right shoulder surgery did not decrease her symptoms as

3    much as she had hoped and she was concerned that "surgery on the other side

4    would be the same." ECF No. 10 at 8. While Plaintiff did relate these concerns to

5    her nurse practitioner, she also asked if she could forgo treatment and "just get

6    disability." AR 633. Moreover, Plaintiff fails to address the additional evidence the

7    ALJ relied on, including her failure to seek mental health treatment. *See Hall*, 2010

8    WL 2901782, at *2.

9    **3.    Lack of ongoing employment unrelated to impairments**

10    Finally, the ALJ partially discredited Plaintiff's testimony because her

11    ongoing unemployment was due to factors unrelated to her allegedly disabling

12    impairments. AR 30. The ALJ first observed that Plaintiff collected unemployment

13    benefits throughout most of 2015, which required a willingness and ability to

14    work. AR 30; *see* AR 206. The ALJ then reasoned that Plaintiff's initial assertions

15    that she was able to work—which she made for purposes of collecting

16    unemployment benefits—contradicted her later allegations that she was disabled

17    during this time period. AR 30; *see Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th

18    Cir. 2014) ("Continued receipt of unemployment benefits does cast doubt on a

19    claim of disability, as it shows that an applicant holds himself out as capable of

20    working.").

1    Additionally, the ALJ noted that Plaintiff worked as a cashier from

2    December 2014 to February 2015—which was also during the period of alleged

3    disability. AR 30, 1181. Plaintiff told a medical provider that she could have

4    continued working at this job, but they no longer needed her. AR 1218. After being

5    laid off, she applied for over 80 jobs. AR 1182. Roughly 60 of these businesses

6    declined to hire her because of her limited English skills. AR 1182. The ALJ

7    found, however, that "the remaining 20 jobs include[d] work the claimant

8    presumptively would have been able to perform." AR 30. In light of this evidence,

9    the ALJ found that Plaintiff's allegations were not entirely credible. AR 30.

10    Citing her hearing testimony, Plaintiff argues that she was unable to

11    maintain her cashier job "due to a combination of her physical, mental, and

12    emotional limitations." ECF No. 10 at 9 (citing AR 51, 64). However, she told a

13    provider that she could have continued working this job had the employer still

14    needed her. AR 1218. When the record contains conflicting evidence, resolving

15    these conflicts is the province of the ALJ, not the Court. *Matney*, 981 F.2d at 1019.

16    When the ALJ presents a reasonable interpretation that is supported by

17    substantial evidence, it is not the Court's role to second-guess it. For the reasons

18    discussed above, the ALJ did not err when discounting Plaintiff's subjective

19    complaint testimony because he provided multiple clear and convincing reasons

20    for doing so.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 15**

**B.    The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in weighing the medical opinions of: (1) the state agency psychological consultants, (2) treating nurse practitioner Cari Cowin, ARNP, (3) examining psychiatrist Ronald Early, M.D., Ph.D., and (4) examining occupational therapist Beverly Andersen, OTR/L, CHT. ECF No. 10 at 9-13. Plaintiff also argues that the ALJ erred by failing to consider or assign weight to the chart notes of treating physician's assistant Jennifer Williams and treating nurse practitioner Erin See. ECF No. 10 at 11.

**1.    Legal principles**

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing

1    "specific and legitimate reasons that are supported by substantial evidence."

2    *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies this

3    standard by "setting out a detailed and thorough summary of the facts and

4    conflicting clinical evidence, stating his [or her] interpretation thereof, and making

5    findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an

6    ALJ fails to satisfy this standard when he or she "rejects a medical opinion or

7    assigns it little weight while doing nothing more than ignoring it, asserting without

8    explanation that another medical opinion is more persuasive, or criticizing it with

9    boilerplate language that fails to offer a substantive basis for his [or her]

10   conclusion." *Id.* at 1012-13.

11       Importantly, the "specific and legitimate" standard only applies to evidence

12   from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include

13   licensed physicians, licensed psychologists, and various other specialists. *See* 20

14   C.F.R. § 404.1502(a). "Other sources" for opinions—such as nurse practitioners,

15   physician's assistants, therapists, teachers, social workers, chiropractors, and

16   nonmedical sources—are not entitled to the same deference as acceptable medical

17   sources.[2] 20 C.F.R. §§ 404.1502(e), 404.1527(f); *Molina*, 674 F.3d at 1111; *Dale*

18   *v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). An ALJ may discount an "other

19

20
_____

[2] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician's assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 404.1502(a)(7)-(8). Plaintiff filed her claim in 2015, so this does not apply here.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 17**

source's" opinion by providing a "germane" reason for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### 2.  State agency psychological consultants

Christmas Covell, Ph.D., and Thomas Clifford, Ph.D., separately reviewed Plaintiff's file and determined that her depression was not severe. AR 93, 101-03. Because Plaintiff had not sought mental health treatment, both evaluators relied heavily on a recent psychiatric examination in which Dr. Dowell found that Plaintiff's mental impairment was "caused by her shoulder injury and then being laid-off from work." AR 88-89, 101-03, 613. Dr. Dowell did not believe Plaintiff's mental condition would hinder her ability to work. AR 613.

The ALJ gave great weight to Dr. Covell's and Dr. Clifford's opinions, reasoning that the "situational component" of Plaintiff's mental symptoms and "the lack of regular mental health treatment" supported their findings that Plaintiff's depression was not severe. AR 31.

Plaintiff argues that the ALJ should have given these opinions less weight because Dr. Covell and Dr. Clifford "reviewed records early in the claim" and did not have the benefit of subsequent medical evidence. ECF No. 10 at 11. While this is true—as Dr. Covell and Dr. Clifford could not have reviewed records that did

not yet exist[3]—Plaintiff does not address the reason the ALJ actually gave for crediting their opinions. Instead, Plaintiff asks the Court to reweigh the evidence based on criteria the ALJ did not consider, which would be improper. *See Travis P. v. Saul*, 2:18-cv-00388-RHW, ECF No. 11 at 21-22 (E.D. Wash. 2020) (rejecting this precise argument).

Plaintiff also appears to argue that the ALJ erred by giving great weight to the consultative psychologists' opinions but not to "a single treating provider." ECF No. 10 at 11. However, as discussed above, Plaintiff never sought mental health treatment. *Supra* at 13. It is therefore unclear what treating mental health provider Plaintiff believes should have been assigned greater weight.

### 3.  Treating physician's assistant Jennifer Williams and treating nurse practitioner Erin See

Plaintiff also argues that the ALJ failed to analyze or assign weight to the chart notes from Jennifer Williams, PA-C, and Erin See, ARNP. ECF No. 10 at 11. Plaintiff argues that these providers physically examined her "over an extensive period of time" and that "[t]his relationship should have been considered." *Id.* However, ALJs are only required to consider "opinions," which the regulations define as statements "that reflect judgments about the nature and severity of [claimants'] impairment(s), including [their] symptoms, diagnosis and prognosis,

---

[3] Because state agency review is the first stage in the adjudicative process, the record that these physicians and psychologists have available will necessarily be more limited. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**

what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Plaintiff cites numerous pages of chart notes from Ms. Williams and Nurse See, but it does not appear—nor does Plaintiff explain—how any of these notes constitute an "opinion" as the term is defined in the regulations. *See* ECF No. 10 at 11 (citing AR 614-620, 1145-1159, 1315-1362). Accordingly, Plaintiff fails to establish that the ALJ erred by not specifically assigning weight to Ms. Williams' or Nurse See's chart notes.

### 4.    Treating nurse practitioner Cari Cowin

Cari Cowin, ARNP, was Plaintiff's treating nurse practitioner from January 2012 to October 2014. AR 472, 1084. Plaintiff first saw Nurse Cowin for purposes of filing a second workers' compensation claim, in which she alleged a left shoulder injury due to overuse after her right shoulder surgery. AR 1084-86. Nurse Cowin diagnosed left shoulder sprain and left tennis elbow. AR 1084.

Nurse Cowin completed monthly activity prescription forms for Plaintiff's open workers' compensation claims with the Washington State Department of Labor & Industries. From October 2012 onward, she opined in these forms that Plaintiff could work full time but on a modified basis, with limited reaching and working above shoulder-level.[4] AR 396, 470, 472, 601, 1117-1124, 1136.

---

[4] Nurse Cowin had temporarily restricted Plaintiff from performing any work between April 2012 and October 2012, AR 1094-1100, 1112, but this was over a year before Plaintiff's alleged onset of disability.

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 20**

However, in one monthly L&I form (and only in this one month), Nurse Cowin opined that Plaintiff could work full time but could never reach with either arm. AR 470. However, she amended this opinion a few weeks later and stated that Plaintiff could reach frequently and could also work overhead occasionally. AR 1136. In the next monthly L&I form (and only in this month), Nurse Cowin opined that Plaintiff was limited to working four hours per day. AR 472.

In June 2013, Nurse Cowin agreed that Plaintiff needed no further treatment, that she had mild permanent impairment in both shoulders, and that she could return to work. AR 1125; *see* AR 318-321 (May 7, 2013 IME). She released Plaintiff to gradually return to her prior job as a produce sorter and also opined that Plaintiff could work as either a tray filler or housekeeper with some modifications. AR 1113-16, 1126, 1128-29. She also reviewed job descriptions for childcare attendant, shipping clerk, and cashier and believed that Plaintiff could do these jobs full time with no restrictions. AR 1127, 1130-31. Two years later, in April 2015, Nurse Cowin again restated this opinion. AR 559; *see* AR 362-63 (March 17, 2015 IME).

The ALJ effectively adopted Nurse Cowin's opinion and incorporated her opined limitations into the residual functional capacity: he found that Plaintiff could work, but could never reach above her shoulders and could only occasionally reach at or below shoulder-level. AR 26-27. However, the ALJ discounted Nurse

Cowin's temporary, one-month opinions that Plaintiff could never reach and could only work four hours per day. AR 32. The ALJ reasoned that these one-month restrictions were "extremely temporary in nature" which suggested that they were "highly based on [Plaintiff's] subjective complaints such as pain level." AR 32.

Plaintiff contends that the ALJ erred, arguing that the monthly L&I forms "were completed regularly over an extended period time [sic], thus providing a longitudinal opinion of [Plaintiff's] limitations." ECF No. 10 at 11-12. While this is true, Nurse Cowin consistently opined that Plaintiff only had mild shoulder restrictions and could work full time. AR 396, 601, 1117-1124, 1136. She only believed that Plaintiff's ability to work was significantly limited for two discrete months, which the ALJ was entitled to leave out of the residual functional capacity. AR 470, 472; *see Carmickle*, 533 F.3d at 1165 (medical opinions that assess only temporary limitations are of little probative value); *Romo v. Berryhill*, 2018 WL 3751981, at *9 (W.D. Wash. 2018) (holding that ALJ was entitled to discount opinions in several months of L&I activity prescription forms due to their temporary nature).

### 5.   Examining psychiatrist Ronald Early, M.D., Ph.D.

Dr. Early evaluated Plaintiff in May 2016. AR 1180-89. He diagnosed her with unspecified depressive disorder and unspecified anxiety disorder. AR 1184. He administered the Beck Depression Inventory and Plaintiff "scored 30, which

would be consistent with a severe level of depression." AR 1183. He also performed a mental status examination which was normal, other than a depressed mood. AR 1183. Regarding Plaintiff's specific mental abilities, he opined that Plaintiff generally had no limitations with understanding and memory, mild limitations with social interaction, moderate limitations with adaption, and marked limitations with maintaining concentration and completing a normal workweek without interruption from psychological symptoms. AR 1186-88. He did not believe Plaintiff would benefit from mental health treatment. AR 1185.

With respect to Plaintiff's ability to work, Dr. Early believed that Plaintiff could not "perform the duties of a cashier because of the physical requirements and because of the stress associated with waiting on customers who are under pressure to leave and often standing in line." AR 1184. In addition to being unable to be a cashier, Dr. Early opined that it was "unlikely [Plaintiff] would be able to sustain meaningful and gainful employment" at all, due to "depression, loss of confidence, fear of increasing pain[,] and difficulties with concentration," which were "complicated by the physical injuries with physical limitations." AR 1185. Dr. Early concluded that Plaintiff's mental conditions were at maximum medical improvement but were permanent. AR 1185; *see* WAC 296-20-340(3).

Two months after Dr. Early's evaluation, Plaintiff was evaluated by another psychiatrist, Dr. Vandenbelt. AR 1214-24. Dr. Vandenbelt outlined Plaintiff's

medical record and criticized Dr. Early's use of the Beck Depression Inventory, noting that the test "is entirely subjective and has no validity measurements. Hence, it has very limited forensic value." AR 1217. However, he agreed with Dr. Early that Plaintiff suffered from unspecified depressive disorder. AR 1222. He performed a mental status examination which was again normal, other than a depressed mood and "a significant focus on somatic concerns." AR 1222.

Dr. Vandenbelt opined that Plaintiff had "a growing disability conviction that exist[ed] in a vicious cycle with her depression." AR 1224. He believed that Plaintiff would benefit from mental health treatment including psychotherapy, counseling, and medication. AR 1223-24. He analyzed in detail how an antidepressant called Nortriptyline would be effective, particularly in rectifying Plaintiff's identified concentration issues. AR 1224. Regarding ability to work, he concluded that there was "no mental health reason why [Plaintiff] cannot return to full-time continuous gainful employment. In fact, a return to work would be helpful." AR 1224.

The ALJ considered both Dr. Early's and Dr. Vandenbelt's evaluations and observed that they were performed very closely together but had "vastly different" results. AR 32. After outlining each of their findings and opinions, the ALJ ultimately concluded that Dr. Vandenbelt was more persuasive. AR 32. The ALJ reasoned that: (1) Dr. Early based part of his opinion on physical considerations,

1  even though he did not perform a physical examination, (2) Dr. Early's opinion

2  that Plaintiff would not benefit from mental health treatment was questionable

3  given that such treatment had never been attempted, (3) Dr. Early's opinion that

4  Plaintiff had marked limitations in her ability to concentrate contradicted his own

5  mental status examination findings, which were essentially normal, (4) Dr. Early

6  based his opinion in part on the Beck Depression Inventory, "which is a subjective

7  test and has no validity measurement," and (5) Dr. Vandenbelt's "explanation and

8  report overall [was] more thorough," it explained why treatment would be helpful,

9  and also "explained the problems with Dr. Early's reliance on the subjective Beck

10  test." AR 31-32. These were proper bases for crediting Dr. Vandenbelt's opinion

11  over Dr. Early's. *See Tommasetti*, 533 F.3d at 1041.

12       As an initial matter, the Court notes that Plaintiff only addresses the second

13  and fourth reasons the ALJ gave for discounting Dr. Early's opinion. *See* ECF No.

14  10 at 12, No. 12 at 4. By not addressing all the ALJ's rationales, Plaintiff has

15  waived her challenge to the ALJ's consideration of Dr. Early's opinion. *See*

16  *Carmickle*, 533 F.3d at 1161 n.2; *Geoffrey H. v. Saul*, No. 4:18-CV-05151-RHW,

17  ECF No. 16 at 12-13 (E.D. Wash. 2020); *Matthew S. v. Saul*, No. 4:18-CV-05115-

18  RHW, ECF No. 16 at 12-15 (E.D. Wash. 2019).

19       But in any event, Plaintiff's arguments ask the Court to reweigh the

20  evidence. Plaintiff argues that the ALJ should have credited Dr. Early's opinion

because he administered the Beck Depression Inventory, whereas Dr. Vandenbelt

did not. ECF No. 10 at 12, No. 12 at 4. However, the ALJ found that this was

actually a reason to discount Dr. Early's opinion, given that the Beck Depression

Inventory "is a subjective test" with "no validity measurement." AR 32. Plaintiff

also argues that Dr. Early's belief that she would not have benefitted from mental

health treatment was explained by "cultural differences, educational limitations,

not being psychologically minded," and the fact that her depression is the result of

long-term chronic pain. ECF No. 10 at 12. The ALJ, however, questioned this

opinion given that treatment had never been attempted. AR 31-32. It is the ALJ's

province to weigh the persuasive value of the various medical opinions and absent

some legal error—which Plaintiff fails to identify here—it is not the Court's role to

reassess those determinations. *Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir.

2002).

### 6.    Examining occupational and hand therapist Beverly Andersen

Beverly Andersen, OTR/L, CHT, examined Plaintiff in July 2016.

AR 1190-1213. She found that Plaintiff had significant lifting restrictions, limited

bilateral shoulder range of motion, and bilateral arm weakness. AR 1193. She did

not believe Plaintiff could perform any tasks that required repetitive forward

reaching or overhead work. AR 1193. Overall, she believed Plaintiff could tolerate

sedentary work. AR 1193. She noted, however, that Plaintiff gave "questionable effort on grip testing." AR 1193.

The ALJ assigned minimal weight to Ms. Anderson's opinion, reasoning that (1) she is not a physician, nurse, or even a physical therapist, (2) she noted "questionable effort" on some tests but did not factor this into her ultimate assessment, and (3) the majority of her testing focused on grip and pinch strength, hand swelling, hand sensation, and gross and fine dexterity skills, even though Plaintiff had never been diagnosed with any hand impairments. AR 33.

Again, Plaintiff only addresses the first two reasons the ALJ gave for discounting Ms. Anderson's opinion.[5] *See* ECF No. 10 at 12-13. Plaintiff does not address the third rationale at all—that Ms. Anderson's testing focused almost entirely on grip and pinch strength, hand swelling, hand sensation, and gross and fine dexterity skills, even though Plaintiff had never been diagnosed with any hand impairments. *See id.* By not addressing all the ALJ's rationales, Plaintiff has waived her challenge to the ALJ's consideration of Ms. Anderson's opinion. *See Carmickle*, 533 F.3d at 1161 n.2; *Geoffrey H.*, No. 4:18-CV-05151-RHW, ECF No. 16 at 12-13; *Matthew S.*, No. 4:18-CV-05115-RHW, ECF No. 16 at 12-15.
///

---

[5] With respect to the ALJ's first rationale, Plaintiff argues, without citation to authority, that "Ms. Andersen, as a Certified Hand Therapist, is an acceptable medical source." ECF No. 10 at 12-13. This is incorrect. *See* 20 C.F.R. § 404.1502(a)(1)-(8) (list of acceptable medical sources).

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 27**

**C.      The ALJ did not Err in Considering Plaintiff's Lumbar Impairments at Step Two of the Sequential Evaluation Process**

Plaintiff contends the ALJ should have found that two lumbar impairments—spondylolisthesis and arthrodesis, specifically—were severe. ECF No. 10 at 13-15.

At step two in the sequential evaluation, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden to establish that he or she (1) has a medically determinable impairment and, (2) that the impairment is severe. 20 C.F.R. §§ 404.1512, 404.1521. A diagnosis itself does not equate to a finding of severity. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Edlund*, 253 F.3d at 1159.

Moreover, to establish the existence of a severe impairment, the claimant must provide a diagnosis from an "acceptable medical source," such as a licensed physician or psychologist.[6] 20 C.F.R. § 404.1521. Importantly, the impairment must also last or be expected to last for at least 12 months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

---

[6] For claims filed before March 27, 2017—such as this one—physician's assistants do not qualify as "acceptable medical sources." 20 C.F.R. § 404.1502(a)(8).

When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point "to a host of diagnoses scattered throughout the medical record." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019); *Michelle S. v. Comm. of Soc. Sec.*, No. 1:18-CV-03199-RHW, ECF No. 17 at 14, 17-18 (E.D. Wash. 2020). Rather, to establish harmful error, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis. *Cindy F.*, 367 F. Supp. 3d at 1207.

Here, the ALJ acknowledged Plaintiff's complaints of back pain, noting that these complaints largely arose "later in the period under consideration, arising mostly in 2016." AR 24. Plaintiff's treating physician's assistant noted that her "back x-rays were negative while her MRI showed only mild findings." AR 24; *see* AR 1323, 1357. In October 2016, Plaintiff first sought treatment from a physician—Michael Chang, M.D.—for her lumbar condition. AR 1363. Dr. Chang diagnosed her with spondylolisthesis at L4-5. AR 1376. Plaintiff underwent an epidural steroid injection, which resulted in "90% improvement in her pain for 2 weeks." AR 1367. However, in February 2017, Dr. Chang noted that the injection, while diagnostic, "was not therapeutic" and that Plaintiff was "ready for surgery." AR 1368. Dr. Chang performed a lumbar fusion in July 2017. AR 1376-77. Two weeks later, he noted that Plaintiff's "pains [were] well controlled with

medications." AR 1374. In light of this evidence, the ALJ found that Plaintiff's lumbar impairments were not "a long-term chronic problem." AR 24.

Plaintiff argues that her lumbar conditions were in fact a long-term chronic problem because she complained about them to her physician's assistant in 2013 and attended physical therapy for her back in early 2016. ECF No. 10 at 14 (citing AR 638-659, 1145-1154). However, neither her physician's assistant nor her physical therapist ever diagnosed spondylolisthesis or arthrodesis.[7] *See* AR 638-659, 1145-1154. Moreover, Plaintiff told her physician's assistant in 2013 that her back pain was "not really that severe," AR 1148, and the same physician's assistant later noted that Plaintiff's x-rays were negative and that her MRI only showed mind findings. AR 1323. Finally, even if the ALJ had erred (which has not been established), Plaintiff does not explain how any error was harmful because she does not identify any functional limitations put forth by a medical provider that were caused by her lumbar condition. *Cindy F.*, 367 F. Supp. 3d at 1207.

## D.  The ALJ's Finding that Plaintiff Could Speak English at a First-Grade Level

Plaintiff contends that the ALJ erred in finding that she was able to speak English at a first-grade level. ECF No. 10 at 15-16. She cites her hearing testimony that she only speaks Spanish in the home, that she understands very little when

---

[7] Although Plaintiff argues that the ALJ should have found that lumbar arthrodesis was a severe impairment, she does not identify a diagnosis for this condition anywhere in the record. *See* ECF No. 10 at 13-15, No. 12 at 5-6.

store attendants speak to her in English, that she cannot read a newspaper in English, and that she does not remember what she learned in her ESL classes *Id.* (citing AR 49-50). She also argues that many businesses would not hire her due to her English limitations and that she regularly used interpreters at her medical appointments. *Id.*

However, there is also contrary evidence in the record suggesting that Plaintiff had some limited English language skills. Plaintiff took English classes at a community college four evenings per week. AR 307. The classes were four hours long. AR 417. She took these classes for at least two years. AR 307 (May 2013), 347 (March 2015). By 2015, her assigned L&I vocational counselor noted that she "was able to reach Level 5 (out of 6 levels) providing her with sufficient English to work with a portion of non-Spanish speaking clientele." AR 419. Accordingly, although the record does contain conflicting evidence, the ALJ's finding that Plaintiff was able to speak English at a first-grade level is nonetheless supported by substantial evidence. *Williams v. Comm'r, Soc. Sec. Admin.*, 2008 WL 3092246, at *3 (D. Idaho 2008) ("[I]f there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.").

**E.    The ALJ's Step Five Finding**

Finally, Plaintiff argues that the ALJ improperly found that there were a significant number of jobs in the national economy that she could still perform.

ECF No. 10 at 16-20. Specifically, she argues that the ALJ's hypothetical question for the vocational expert did not account for all of her limitations. *Id.*

However, the hypothetical the ALJ posed to the vocational expert was consistent with his findings relating to Plaintiff's residual functional capacity. *Compare* AR 26-27, *with* AR 70. Plaintiff contends the ALJ failed to include limitations relating to her lumbar impairment, and also failed to include additional limitations provided by Ms. Anderson and Dr. Early. ECF No. 10 at 18-20. However, as discussed above, the ALJ properly discounted Ms. Anderson's and Dr. Early's opinions and found that Plaintiff's lumbar condition was not severe. *See* AR 24, 31-33. Plaintiff's step five argument here just restates her prior arguments that the Court has already rejected. Courts routinely reject this. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857.

Because the ALJ included all of the limitations that he found to exist, and because his findings are supported by substantial evidence, the ALJ did not err in omitting the other limitations that Plaintiff claims, but failed to prove. *See Rollins*, 261 F.3d at 857. Accordingly, the ALJ properly identified available jobs in the national economy that matched Plaintiff's abilities and therefore satisfied step five of the sequential evaluation process.

///

1

## VIII.  Order

2   Having reviewed the parties' briefs, the record, and the ALJ's findings, the

3   Court finds the ALJ's decision is supported by substantial evidence and is free

4   from legal error. Accordingly, **IT IS ORDERED:**

5   1.   Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED.**

6   2.   Defendant's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED.**

7   3.   Judgment shall be entered in favor of Defendant and the file shall be

8        **CLOSED**.

9        **IT IS SO ORDERED.** The District Court Executive is directed to enter this

10  order, forward copies to counsel, and **close the file**.

11       **DATED** this May 20, 2020.

12                    *s/Robert H. Whaley*
                     ROBERT H. WHALEY
13               Senior United States District Judge

14

15

16

17

18

19

20

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT** ~ 33